Benjamin Dinkes et al., on Behalf of Themselves and All Others Similarly Situated, Plaintiffs, *v.* Glen Oaks Village, Inc., et al., Defendants.

Supreme Court, Special Term, Queens County, June 1, 1954.

*Arthur L. Coller* and *Jack E. Bronston* for plaintiffs.

*Goldman, Evans & Goldman* and *Newman & Bisco* for defendants.

PETTE, J.  Plaintiffs' motion is for an injunction enjoining the defendants from prosecuting any action in the Municipal Court of the City of New York to evict them, or any of the persons on whose behalf this action was instituted, and to restrain any collection of an increase in the rentals for the housing accommodations, pending a final determination of an action brought in the United States District Court in the Southern District of New York entitled '' BENJAMIN DINKES and HARVEY KATES, on behalf of themselves and all others similarly situated, Plaintiffs, against THE FEDERAL HOUSING ADMINISTRATION, GLEN OAKS VILLAGE, INC. and GROSS-MORTON MANAGEMENT CORP., Defendants.''

Defendants have made a cross motion, pursuant to section 117 of the Civil Practice Act for an order, under rule 106 of the Rules of Civil Practice, dismissing the complaint upon the grounds (a) that the complaint does not state facts sufficient to constitute a cause of action, (b) and on the further ground that the court does not have jurisdiction of the subject of the action.

A brief statement of the pertinent facts follows:

Glen Oaks Village is a project financed by mortgage loans insured by the Federal Housing Administration (hereinafter referred to as '' FHA '') under section 608 of the National Housing Act (U. S. Code, tit. 12, § 1743).  In behalf of themselves and '' all others similarly situated '' these two tenants allege that although the rents charged at Glen Oaks Village are not in excess of the maximum average rents allowed by FHA, the determination by FHA of such maximum rents was '' arbitrary, unreasonable and capricious '' in that the estimated necessary current cost determined by FHA was much higher than the ultimate actual cost of constructing the project. On that basis the tenants seek a review and a redetermination by FHA of the maximum average rental on a lower scale.

The complaint alleges that the defendants applied for FHA mortgage insurance for the purpose of constructing the project known as Glen Oaks Village; that FHA fixed, as it had the right to, a maximum average rental which defendants were not permitted to exceed; that the rental thus fixed was based upon '' erroneous and false plans, estimates and drawings furnished by defendants '' and known by them to be such; that in reliance thereon FHA fixed a higher average maximum rental than it would have established '' had the plans, schedules and estimates

\* \* \* been accurate "; that FHA's determination of maximum rents was " arbitrary, unreasonable and capricious " its computations were " grossly inaccurate " and they were arrived at " without proper investigation " and without comparison " with the actual construction cost."

The complaint further alleges that the rents currently charged are, therefore, " excessive and illegal " and that plaintiffs " have withheld such portions of the amounts normally paid as rentals to the defendants as are excessive "; the plaintiffs have started the Federal court action to review the determination of FHA; and that defendants have threatened eviction proceedings and have obtained authorization from FHA to increase their rents on the basis of the same erroneous computations. Demand is then made for a final injunction against the bringing of summary proceedings or the increasing of rents pending a final determination of the Federal court action.

It appears that neither the complaint nor the affidavit of Benjamin Dinkes sworn to May 12, 1954, and submitted in support of the plaintiffs' instant motion, avers that the rent charged and/or collected from the tenants of Glen Oaks Village, Inc. (including the individual plaintiffs herein) exceeds the maximum average rent ceiling established by the Federal Housing Administrator. Both the complaint and Mr. Dinkes' affidavit admit that the maximum average rent ceiling is established by the Federal Housing Administrator in his sole discretion. Dinkes refers to various items in the newspapers for the support of his allegations concerning current congressional investigations as to the alleged disclosure that the FHA estimate of over $26,000,-000 turned out to be $6,000,000 more than the actual cost of the Glen Oaks project.

Apparently, on the basis of this disparity between the FHA cost estimates and the later actual cost, the Federal court action was started for the purpose of reviewing FHA's determination.

The moving affidavit alleges that the tenants have withheld 25% of their lease rentals as " excessive and illegal " which they are " entitled " to do and which is " imperative " for their protection; and that the defendants have threatened to bring eviction proceedings against tenants who do not pay the full rents provided for in their leases and that therefore an injunction against such proceedings is necessary, and urges that no harm can come from this because tenants are willing to pay the withheld 25% to an escrowee designated by defendants but to remain in escrow " pending the outcome of the Federal action ".

Finally, Dinkes alleges that FHA permitted an additional maximum rent increase in November of 1952, and that same is unjustified.

The Federal court complaint annexed to the moving papers alleges that the fixing by FHA of the maximum average rents was predicated upon FHA's own estimate as to the necessary current cost of the project; and that this estimate was " arbitrary, unreasonable and capricious " in that FHA failed to determine·the cost " accurately or properly."

In a second cause of action, the complaint adds an allegation that the maximum rental fixed by FHA was based upon its " arbitrary " determination of necessary current costs and was proportionately higher than it would have been had it been fixed on the basis of actual costs.

In a third cause of action plaintiffs allege that the project was constructed in a manner which differed " materially " from the plans originally submitted by the owner, as a result of which the project was constructed at a cost substantially less than estimated.

The complaint contains a broad prayer for relief in the nature of a redetermination of FHA maximum rents *ab initio* on the basis of actual cost of the project, that the defendants be required to pay over to FHA any rents collected in excess of the maximum rents as so redetermined, that FHA distribute such excess among the tenants and that any inconsistent rent increases be set aside.

It is well settled in the State of New York that where a plaintiff applies for the drastic relief of a temporary injunction, he must show a clear probability of ultimate success and that the damage to him would be greater if the injunction were not granted than defendant's damage would be if it were granted.

Even a doubtful cause of action or a cloudy prospect of ultimate success is enough to defeat the application for injunctive relief. This is the more so, and becomes a fatal obstacle to relief when, as in this case, the complaint is wholly insufficient and there is no reasonable possibility that plaintiffs will ever achieve any measure of success.

Conclusory allegations which are not supported by the facts from which the pleader drew his conclusions are " legally ineffective " (*Kalmanash* v. *Smith*, 291 N. Y. 142, 154). Of such character are such allegations as " grossly excessive " (*Kalmanash* v. *Smith, supra*), " exorbitant and out of proportion " (*Loew* v. *Interlake Iron Corp.*, 270 App. Div. 858), and " arbitrary, capricious and unreasonable " (*Matter of Buck* v. *Hurd*, 281 App. Div. 115, 116). It was held in the latter case: " It is

alleged that the action of the appellant in disapproving the determination * * * was 'arbitrary, capricious, unreasonable and without foundation in fact or law', but, of course, those words, like 'wrongfully' or 'fraudulently' in a pleading, have vitality only when they are pinned close to the skin of palpable fact.''

The only *ultimate fact* alleged in the entire complaint to support plaintiffs' attacks upon FHA's determination as '' arbitrary, capricious and unreasonable '' is that the determination was arrived at on the basis of estimates which '' were not compared with the actual construction cost.''

After a careful study of the complaint, it becomes apparent that it is wholly insufficient for the following reasons: (A) It is based upon the erroneous assumption that the Federal Housing Commissioner was under a duty, if the actual cost of construction proved to be less than the cost originally estimated by him, to revise the maximum rents downward to give effect to the lower actual construction cost. It is clear from both the statute (National Housing Act, § 608, U. S. Code, tit. 12, § 1743) and from the Commissioner's regulations *that neither the statute nor the regulations ever contemplated any downward revision of maximum rents on the basis of what the actual construction cost ultimately turned out to be.* Section 608 contains no absolute requirement that the Commissioner restrict the maximum rents to be charged by any mortgagor under a mortgage insured by FHA. It merely provided (U. S. Code, tit. 12, § 1743) that '' The Commissioner may, in his discretion, require such mortgagor to be regulated or restricted as to rents ''; (B) The complaint in this action seeks the aid of this court in an attempt to obtain a review and redetermination of the administrative action of the Federal Housing Commissioner; *this court has no jurisdiction to entertain such an application or to give any relief to that end.*

Pursuant to section 608, the FHA Commissioner issued regulations which forbade mortgagors to charge more than the rents contained in a schedule filed with the Commissioner prior to the opening of the project for rental '' *which schedule shall be based upon a maximum average rental fixed prior to the insurance of the mortgage* ''. (Code of Fed. Reg., tit. 24, § 280.30, subd. [a]; italics supplied.)

The Commissioner in so exercising the discretion conferred upon him by Congress elected only to restrict mortgagors to maximum average rentals which were '' *fixed prior to the insurance of the mortgage* ''. Obviously, this is utterly inconsistent

with the theory of the present complaint that the maximum rents should have been fixed or readjusted on the basis of actual cost of construction which, in the very nature of things, could not possibly have been ascertained " prior to the insurance of the mortgage ".

The correctness of the conclusion that no subsequent downward revision of rent ceilings was contemplated is confirmed by the fact that the regulations provide only for *increases* in the rent ceilings and make no similar provision for *decreases*. The same rule (§ 280.30, subd. [a]) provides that the maximum rentals " fixed prior to the insurance of the mortgage * * * shall not thereafter be changed except *upon application of the mortgagor* to, and the written approval of the change by, the Commissioner." (Italics supplied.)

Nowhere in the pattern and structure of the statute and the regulations is there any provision for applications by tenants, either with respect to rent ceilings or any other matter within the jurisdiction of the Commissioner.

The statutory pattern which permits rents to go up but not down is exemplified in the analogous case of *Wasservogel* v. *Meyerowitz* (300 N. Y. 125), wherein the Court of Appeals at page 132 said: " It may be that, as to a landlord forced to keep a tenant, due process requires that he have a court review of any claim he may make that a reduction of rent, or refusal to allow an increase, is confiscatory (see *Yakus* v. *United States,* 321 U. S. 414, 431 *et seq.; Bowles* v. *Willingham, supra,* pp. 519–521). But no property or vested right of the statutory tenant is taken when his rent is raised. A tenant under a lease may, when that express lease ends, move or stay. If he stays, he is exercising a privilege granted him by law, and with the benefits thereof he must bear the burdens, including that created by the danger that government may allow his landlord to charge a higher rental, and that retroactively."

The Court of Appeals then continued page 134: " And the law of this State, under the *Schmoll* case [*Matter of Schmoll, Inc.,* v. *Federal Reserve Bank,* 286 N. Y. 503] and its predecessors, is and was that our State courts have no jurisdiction to review Federal administration orders."

The only occasion where the State court may have jurisdiction over an action with respect to rentals fixed by the FHA is where the *maximum rentals* established by FHA have been *exceeded by the landlord* (*Brinkmann* v. *Urban Realty Co.,* 10 N. J. 113). But even where the landlord has failed to comply with the FHA regulations, the State court has no

power to fix the rentals itself or to lend its aid to their determination (*Parkin* v. *Damen-Ridge Apts.*, 348 Ill. App. 428).

In the recent case of *Globerman* v. *Grand Central Parkway Gardens* (115 N. Y. S. 2d 757, 760, affd. 281 App. Div. 820), the tenants instituted an action and sought to enjoin the defendant-landlords from demanding increased rents and from commencing summary proceedings. The premises were subject to FHA insured mortgages, but, as in this case, were not subject to any emergency rent control legislation. The tenants alleged that the attempted rent increases were " ' void and illegal ' " but they failed to set forth any facts to " support their conclusion that the rental increases demanded were *in excess of the* maximum rentals authorized by the FHA or that the landlords' demands were ' void and illegal ' " and the complaint was " dismissed for legal insufficiency."

The complaint, and each of the causes of action set forth therein on behalf of the plaintiffs — Benjamin Dinkes and Harvey Kates, " on behalf of themselves and all others similarly situated " must be dismissed for legal insufficiency, since this action may not be maintained as a representative action (*Adelson* v. *Sacred Associates Realty Corp.*, 192 App. Div. 601 ; *Globerman* v. *Grand Central Parkway Gardens*, 115 N. Y. S. 2d 757, affd. 281 App. Div. 820, *supra*).

Having reached the conclusion that, upon the facts, the allegations of the complaint and those contained in the motion papers, this complaint fails to state facts sufficient to constitute a cause of action and that the court does not have jurisdiction of the subject of the action, plaintiffs' motion for a temporary injunction is denied in all respects, and the cross motion to dismiss the complaint is granted.

Submit order.